# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

———————————

UNITED STATES OF AMERICA *ex rel.* SEAN GOSE, as Personal Representative
of the Estate of DENNIE GOSE, et al.,

Plaintiffs-Appellants,

v.

NATIVE AMERICAN SERVICES CORPORATION, et al.,

Defendants-Appellees.

———————————

On Appeal from the United States District Court
for the Middle District of Florida

———————————

## BRIEF FOR THE UNITED STATES OF AMERICA
## AS AMICUS CURIAE SUPPORTING APPELLANTS

———————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney*
  *General*

ROGER B. HANDBERG
  *United States Attorney*

MICHAEL S. RAAB
CHARLES W. SCARBOROUGH
SIMON C. BREWER
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7529*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 616-5367*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1, I hereby certify that the Certificate of

Interested Persons contained in the Appellants' Opening Brief is complete, other than

the following additions:

Brewer, Simon C., U.S. Department of Justice, Civil Division

Greenspoon Marder, LLP, counsel for Appellee NASCO

Raab, Michael S., U.S. Department of Justice, Civil Division

Scarborough, Charles W., U.S. Department of Justice, Civil Division

As far as the undersigned is aware, no publicly traded corporation has an

interest in the outcome of this appeal apart from American Financial Group (AFG),

the parent company of Appellee Great American Insurance Company.


 /s/ *Simon C. Brewer*
Simon C. Brewer
Attorney for the United States

Dated: May 12, 2023

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND STATEMENT OF INTEREST ........................................... 1

STATEMENT OF THE ISSUE ......................................................................... 2

STATEMENT OF THE CASE ........................................................................... 2

     A.    Statutory and Regulatory Background ......................................... 2

         1.    The False Claims Act ...................................................... 2

         2.    The 8(a) Business Development Program ....................... 3

     B.    Factual and Procedural Background ........................................... 6

SUMMARY OF ARGUMENT ......................................................................... 8

ARGUMENT ............................................................................................. 10

The District Court Erred in Holding That the 8(a) Program's Change in
Ownership and Control Requirements Do Not Apply to Program
Graduates. ............................................................................................. 10

     A.    The statute requires termination of 8(a) contracts absent a waiver
without regard to a business's graduation. ................................. 10

     B.    The implementing regulation confirms that the change in
ownership and control requirements persist after graduation. ............... 12

     C.    Prior SBA administrative adjudications do not undermine SBA's
interpretation. ............................................................................ 18

CONCLUSION ......................................................................................... 19

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF CITATIONS

**Cases:** Page(s)

*Cook County v. United States ex rel. Chandler,*
538 U.S. 119 (2003) ............................................................. 2

*County of Maui v. Hawaii Wildlife Fund,*
140 S. Ct. 1462 (2020) ......................................................... 17

*David's Custom Roofing & Painting, Inc.,*
SBA No. BDP-344, 2010 WL 8747273 (Mar. 16, 2010) .......................... 18

*Environmental Def. v. Duke Energy Corp.,*
549 U.S. 561 (2007) ............................................................ 14

*Epic Sys. Corp. v. Lewis,*
138 S. Ct. 1612 (2018) ......................................................... 15

*FTSI-Phelps JV,*
SBA No. SIZ-5583, 2014 WL 4804769 (Aug. 19, 2014) ........................... 18

*Hi-Tech Pharm., Inc. v. HBS Int'l Corp.,*
910 F.3d 1186 (11th Cir. 2018) ................................................. 6

*Kisor v. Wilkie,*
139 S. Ct. 2400 (2019) ......................................................... 12

*Palm Beach County v. Federal Aviation Adm'r,*
53 F.4th 1318 (11th Cir. 2022) ................................................ 12

*Reality Techs., Inc.,*
SBA No. BDP-455, 2012 WL 8134444 (Nov. 21, 2012) ........................... 18

*Robinson v. Shell Oil Co.,*
519 U.S. 337 (1997) ............................................................ 13

*Rubin v. Islamic Republic of Iran,*
138 S. Ct. 816 (2018) .......................................................... 11

*Shek, In re,*
947 F.3d 770 (11th Cir. 2020) ................................................. 13

---

* Authorities upon which we chiefly rely are marked with asterisks.

**Statutes:**

False Claims Act (FCA):
   31 U.S.C. § 3729 *et seq.* ............................................................................ 1
      31 U.S.C. § 3729(a)(1)(A) ................................................................. 2
      31 U.S.C. § 3729(a)(1)(B) ................................................................. 2
      31 U.S.C. § 3729(b)(4) ...................................................................... 2
      31 U.S.C. § 3730(a) ........................................................................... 3
      31 U.S.C. § 3730(b)(1) ...................................................................... 3

15 U.S.C. § 631(f) ......................................................................................... 16

15 U.S.C. § 631(f)(1)(A) ............................................................................... 10

15 U.S.C. § 636(j)(10) .................................................................................... 3

15 U.S.C. § 637(a) .......................................................................................... 3

*15 U.S.C. § 637(a)(21)(A) ...................................................................... 5, 11

15 U.S.C. § 637(a)(21)(B) ........................................................................ 5, 11

*15 U.S.C. § 637(a)(21)(B)(v) ................................................................ 5, 11

42 U.S.C. § 2000e(f) ..................................................................................... 13

**Regulations:**

13 C.F.R. pt. 121 ........................................................................................ 3-4

13 C.F.R. pt. 124 .......................................................................................... 3
   13 C.F.R. § 124.1 ................................................................................ 16
   13 C.F.R. § 124.2 ................................................................................. 4
   13 C.F.R. § 124.3 ........................................................................... 4, 12
   13 C.F.R. § 124.101 ............................................................................. 3
   13 C.F.R. § 124.102 ........................................................................ 3, 4
   13 C.F.R. § 124.105 ....................................................................... 4, 12
   *13 C.F.R. § 124.105(i) .................................................................. 5, 12
   13 C.F.R. § 124.106 ....................................................................... 4, 12
   13 C.F.R. §§ 124.109-124.111 ............................................................ 4
   13 C.F.R. § 124.112(a) ...................................................................... 17
   13 C.F.R. § 124.204(e) ...................................................................... 17

13 C.F.R. § 124.301(a) ..................................................... 14

13 C.F.R. § 124.302(c) ..................................................... 4

13 C.F.R. § 124.303(a)(4) ................................................. 5

13 C.F.R. § 124.304(c) ..................................................... 14

13 C.F.R. § 124.304(f) ...................................................... 13

13 C.F.R. § 124.304(f)(1) ................................................. 13

13 C.F.R. § 124.304(f)(1)-(2) ........................................... 4

13 C.F.R. § 124.501 ......................................................... 3

13 C.F.R. § 124.503(i)(1)(iii) ....................................... 4, 16

*13 C.F.R. § 124.515(a) ........................................ 5, 13, 14

13 C.F.R. § 124.515(b) ................................................. 5, 14

*13 C.F.R. § 124.515(b)(5)(i) ....................................... 5, 14

13 C.F.R. § 124.515(c) ..................................................... 5

13 C.F.R. § 124.518(b) ................................................. 5, 14

13 C.F.R. § 124.521(e)(1) ............................................... 4

48 C.F.R. § 1.104 ......................................................... 15

48 C.F.R. subpt. 16.5 ..................................................... 3

48 C.F.R. subpt. 19.5 ..................................................... 3

48 C.F.R. § 19.812(e) ................................................... 15

**Legislative Materials:**

H.R. Rep. No. 100-1070 (1988) ..................................... 17

S. Rep. No. 99-345 (1986) ............................................. 2

**Other Authorities:**

Ownership and Control and Contractual Assistance Requirements for the 8(a) Business Development Program,

88 Fed. Reg. 26,164 (Apr. 27, 2023) ......................... 15, 16

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ................................................ 13

## INTRODUCTION AND STATEMENT OF INTEREST

The False Claims Act (FCA), 31 U.S.C. § 3729 *et seq.*, is the federal government's primary tool to combat fraud and recover losses due to fraud in federal programs. Accordingly, the United States has a substantial interest in ensuring that courts properly interpret and apply the FCA. The Small Business Administration (SBA) also has a strong interest in the proper interpretation of its regulations.

In this qui tam action under the FCA, the relators allege that defendants committed fraud in connection with a federal contracting program administered by SBA. The applicable statutes and regulations require that, absent a waiver, contracts awarded under the program be performed by businesses owned and controlled by disadvantaged individuals. SBA implements that principle by requiring contractors to report and seek prior approval for anticipated changes in ownership and control. Here, the relators allege that defendants took ownership and control of a business performing such contracts without reporting or seeking approval; consequently, those contracts should have been terminated. The district court held in part that SBA's regulations regarding changes in ownership and control did not apply to the contractor.

The United States is participating in this appeal to urge the Court to correct that erroneous interpretation of the relevant statute and SBA's regulations. The United States expresses no view on whether dismissal may have been proper on other grounds.

## STATEMENT OF THE ISSUE

The sole issue addressed by the United States is whether the district court erred in holding that the 8(a) Business Development Program's requirements regarding changes in ownership and control lapse upon a business's graduation from the Program.

## STATEMENT OF THE CASE

### A.      Statutory and Regulatory Background

#### 1.      The False Claims Act

The FCA is "the Government's primary litigative tool for combatting fraud." S. Rep. No. 99-345, at 2 (1986). The FCA addresses a wide variety of fraudulent schemes, and it was drafted "expansively . . . to reach all types of fraud, without qualification, that might result in financial loss to the Government." *Cook County v. United States ex rel. Chandler*, 538 U.S. 119, 129 (2003) (quotation marks omitted).

An FCA violation can occur when a person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). A violation may also occur when a person "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." *Id.* § 3729(a)(1)(B). The term "material" means "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Id.* § 3729(b)(4). Suits to collect statutory damages and penalties may

be brought either by the Attorney General or a private person (known as a qui tam relator) in the name of the United States. *Id.* § 3730(a), (b)(1).

## 2. The 8(a) Business Development Program

Congress has established a variety of programs to help small businesses. One program—known as the 8(a) Business Development Program (or 8(a) Program)—makes certain small businesses that are majority-owned and controlled by socially and economically disadvantaged individuals eligible for favorable treatment when bidding on federal government contracts. *See* 15 U.S.C. §§ 636(j)(10), 637(a). SBA administers the 8(a) Program and has promulgated implementing regulations. *See* 13 C.F.R. pt. 124.

Under the 8(a) Program, the government limits competition for certain federal contracts, which are known as "small business set-asides." *See* 13 C.F.R. § 124.501. *See generally* 48 C.F.R. subpt. 19.5. One possible type of set-aside is known as an indefinite-delivery, indefinite-quantity contract. *See generally* 48 C.F.R. subpt. 16.5. After entering such a contract, the government can place individual "task orders" for supplies and services.

To be eligible to participate in the 8(a) Program, an entity must be (1) "a small business" and (2) "unconditionally owned and controlled by one or more socially and economically disadvantaged individuals." 13 C.F.R. § 124.101. SBA's regulations set forth size standards for determining whether a business is "small" based on the business's primary industry classification. *See id.* § 124.102 (cross-referencing 13

3

C.F.R. pt. 121; *id.* §§ 124.109-124.111). Determining ownership and control require fact-intensive analyses of a business's organizational structure and operations. *See generally id.* §§ 124.105 (ownership), 124.106 (control).

A small business "admitted to participate in the 8(a) [Business Development] program" is considered a "Participant." 13 C.F.R. § 124.3. A Participant's term in the Program runs for nine years, but that term may be shortened in certain circumstances. *Id.* § 124.2. One of those circumstances is known as "early graduation": if a Participant exceeds the maximum size for a small business in its primary industry, it "graduates" early from the Program. *Id.* §§ 124.102, 124.302(c). Program graduates become ineligible to bid on new 8(a) contracts, but they remain "obligated to complete previously awarded 8(a) contracts." *Id.* § 124.304(f)(1)-(2). Completing existing 8(a) contracts includes fulfilling any task orders placed under previously awarded contracts. *See id.* § 124.503(i)(1)(iii) ("A concern . . . may generally continue to receive new [task] orders even if it has grown to be other than small or has exited the 8(a) [Business Development] program . . . ."); *id.* § 124.521(e)(1) ("For an indefinite delivery, indefinite quantity (IDIQ), Multiple Award 8(a) Contract, . . . a concern that is an eligible 8(a) Participant at the time of initial offer . . . will be considered an 8(a) Participant for each order issued against the contract, unless a contracting officer requests a new 8(a) eligibility determination in connection with a specific order.").

4

An 8(a) Participant may change its ownership or control, so long as one or more disadvantaged individuals own and control it after the change. The business generally must notify and seek SBA approval for changes in ownership or control. 13 C.F.R. § 124.105(i). If the business fails to obtain prior written approval for changes in ownership or control, SBA may terminate the business's participation in the 8(a) Program for good cause. *Id.* § 124.303(a)(4).

A contract awarded under the 8(a) Program ordinarily must be performed by the business that initially received it. 15 U.S.C. § 637(a)(21)(A); 13 C.F.R. § 124.515(a). That principle requires SBA to terminate an 8(a) contract if the disadvantaged individual on whom eligibility for the Program was premised relinquishes ownership or control such that the Participant would not be owned or controlled by disadvantaged individuals. 15 U.S.C. § 637(a)(21)(A); 13 C.F.R. § 124.515(a)(1)(i); *id.* § 124.518(b). In certain circumstances, however, SBA may waive those requirements. 15 U.S.C. § 637(a)(21)(B); 13 C.F.R. § 124.515(b). To obtain a waiver, the contractor must submit a request in writing, specifying the grounds upon which it qualifies. 13 C.F.R. § 124.515(c). One such ground is if the business needs to raise equity capital, but this waiver is only available if the business "has graduated" from the 8(a) Program. *Id.* § 124.515(b)(5)(i); *see also* 15 U.S.C. § 637(a)(21)(B)(v) (authorizing the same waiver if the business "has exited" the Program).

## B. Factual and Procedural Background

**1.** Dennie Gose, a disabled veteran, founded DWG & Associates, Inc. (DWG), an architecture and construction business. Dkt. 76, ¶ 18 (First Amended Complaint or FAC).[1] Gose owned 51% of the company, and his co-owner Brent Berry owned the other 49%. FAC ¶ 68. DWG was admitted to the 8(a) Program based on Gose's status as a socially and economically disadvantaged individual. FAC ¶ 69. DWG successfully competed for several 8(a) set-aside contracts, but it grew and eventually exceeded the applicable size limit, graduating early from the Program in 2010. FAC ¶¶ 70, 72. As permitted under the statute and regulations, DWG continued to perform its existing contracts, including accepting new task orders under its indefinite-quantity, indefinite-delivery contracts. FAC ¶¶ 72-73.

DWG's financial situation deteriorated after its graduation. FAC ¶ 75. Under financial pressure, it entered into a series of financial and operational agreements with its surety bond provider, Great American Insurance Company (GAIC) and a construction management company, Native American Services Corporation (NASCO). FAC ¶¶ 77-79, 86, 116-159. These agreements allegedly gave GAIC and NASCO operational control over DWG, as well as deprived Gose of his unconditional majority ownership, in 2012. FAC ¶¶ 104-197. Neither GAIC nor

---

[1] Because this appeal arises from the dismissal of the relators' complaint, all facts herein are drawn from the operative complaint. *See Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018).

NASCO sought an SBA waiver for this alleged change in ownership and control, FAC ¶ 199, despite knowing that a waiver was required, FAC ¶¶ 222-237. Following the alleged change in ownership and control, DWG continued to bid on, receive awards for, and be paid on new task orders under its existing 8(a) contracts. FAC ¶¶ 210-218.

**2.** In 2016, the relators[2] filed this qui tam action under the FCA, contending that GAIC and NASCO made false claims for payment based on the task orders it bid on and received following the alleged change in ownership and control. Dkt. 1. After the United States declined to intervene, Dkt. 29, the district court granted defendants' motion to dismiss the operative complaint, Dkt. 94. As particularly relevant here, the court held that the complaint failed to plead falsity. Specifically, it held that the SBA regulations pertaining to changes in ownership and control lapsed upon DWG's graduation from the 8(a) Program. Dkt. 94, at 12-15. It therefore concluded that neither defendant had violated the relevant regulatory obligations. *Id.* at 14-15. The remainder of the court's order addressed various other pleading defects the court perceived, including whether the claims were pleaded with particularity. *Id.* at 15-24.

**3.** The relators filed a timely motion to alter or amend the judgment. The United States filed a statement of interest supporting the relators' motion. Dkt. 102.

---

[2] Gose and Berry were the original relators. Gose passed away during the pendency of this litigation, and the personal representative of his estate (Sean Gose) has been substituted. Dkt. 37.

That statement explained that the statutory and regulatory provisions relating to a change in ownership or control of a company performing 8(a) contracts do not lapse upon the company's graduation from the 8(a) Program. *Id.* at 2-8. Rather, those requirements persist as long as the business continues to perform 8(a) contracts. *Id.*[3]

The district court denied reconsideration. Dkt. 104. As relevant here, it adhered to its view that because DWG graduated from the 8(a) Program early, it was not a "Participant" for purposes of the change of ownership and control requirements. *Id.* at 4. The court also reiterated the other pleading defects it identified in its prior opinion. *Id.* at 5.

## SUMMARY OF ARGUMENT

The district court erred in holding that SBA's regulations regarding changes in ownership and control lapse upon a business's graduation from the 8(a) Program.

**A.** SBA's organic statute unambiguously requires the termination of an 8(a) contract if the contractor's disadvantaged owner relinquishes ownership or control. That requirement does not differentiate between current 8(a) Program Participants and graduates. Moreover, the statute contains a provision allowing SBA to waive mandatory termination if the business has exited the Program. That provision would

---

[3] The government's statement also explained that fraudulent inducement is a valid theory of liability under the FCA. Dkt. 102, at 8-12. The district court's order denying reconsideration clarified that it had not held that fraudulent inducement was not a viable theory but only that the relators had not adequately pleaded facts supporting such a theory. Dkt. 104, at 5 & n.1. The United States takes no position on the sufficiency of the allegations in this case.

be surplusage if the change in ownership and control restrictions did not apply to Program graduates.

**B.** The text, structure, history, and purpose of SBA's implementing regulation all support the same conclusion. Some regulatory obligations are phrased in terms of what a "Participant" must do, but the regulatory definition of "Participant" is broad enough to encompass Program graduates when context so requires. When read in harmony with surrounding provisions, the change in ownership and control requirements clearly apply to a Program graduate as long as it continues to perform 8(a) contracts. That interpretation is confirmed by the regulation's waiver provision, which, like its statutory counterpart, authorizes a waiver available only to graduates. Moreover, SBA recently promulgated a rule clarifying that Program graduates remain subject to the change in ownership and control regulations. And exempting graduates from the change in ownership and control requirements would undermine the 8(a) Program's purpose by creating a large and obvious loophole that ineligible businesses could exploit to reap the Program's benefits.

**C.** SBA's interpretation does not conflict with prior administrative adjudications. None of the three adjudications cited by the district court addressed whether the change in ownership and control requirements continue to apply to 8(a) Program graduates. Those decisions are therefore irrelevant to the question presented.

# ARGUMENT

## THE DISTRICT COURT ERRED IN HOLDING THAT THE 8(A) PROGRAM'S CHANGE IN OWNERSHIP AND CONTROL REQUIREMENTS DO NOT APPLY TO PROGRAM GRADUATES.

The ownership and control requirements are a core element of the 8(a) Program. They ensure that Program benefits—particularly set-aside contracts—flow to businesses and individuals that have been denied "the opportunity for full participation in our free enterprise system." 15 U.S.C. § 631(f)(1)(A). The statute and regulations therefore direct SBA to enforce the Program's limited scope by terminating 8(a) contracts where unauthorized changes in ownership or control have occurred. Neither the statute nor the implementing regulation draws any distinction between Program graduates and other 8(a) contractors and for good reason: a contrary rule would create an obvious loophole that ineligible businesses and individuals could use to reap the benefits of 8(a) contracts.

### A. The statute requires termination of 8(a) contracts absent a waiver without regard to a business's graduation.

Businesses that have graduated from the 8(a) Program remain subject to the change-in-ownership and control requirements while they continue to perform 8(a) contracts. This conclusion follows directly from the relevant statutory text. The Small Business Act requires SBA to terminate 8(a) contracts for the convenience of the government "if the owner or owners upon whom eligibility was based relinquish ownership or control of such concern, or enter into any agreement to relinquish such

10

ownership or control." 15 U.S.C. § 637(a)(21)(A). That provision draws no distinction between businesses that remain eligible for further awards under the 8(a) Program and those that have graduated but continue to perform 8(a) contracts, as the statute obligates them to do. *See id.*

The statutory waiver provision reinforces that conclusion. The SBA Administrator may waive the termination requirement just discussed in certain conditions. 15 U.S.C. § 637(a)(21)(B). One such waiver allows the "disadvantaged owners of the concern to relinquish ownership of a majority of the voting stock" to raise equity capital "but only if . . . such concern has exited" the 8(a) Program. *Id.* § 637(a)(21)(B)(v). That exemption requires the disadvantaged owners to maintain "control" over the business. *Id.* Those provisions make clear that the district court erred in concluding that the change in ownership and control requirements lapse upon a business's graduation from the Program. Were the district court correct, this waiver provision would be surplusage, as no firm that "has exited" the Program would ever need to seek a waiver. That interpretation should be rejected. *See Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 824 (2018) ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (quotation marks omitted)).

**B.    The implementing regulation confirms that the change in ownership and control requirements persist after graduation.**

Despite the clear statutory text, the district court suggested that SBA's implementing regulation had narrowed the application of the change in ownership and control requirements. *See* Dkt. 104, at 4 ("SBA has not expanded its regulations to encompass concerns that are no longer participants . . . ."). That is not correct. The implementing regulation's "text, structure, history, and purpose," *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019), all demonstrate that Program graduates remain subject to the change in ownership and control requirements while performing 8(a) contracts.

**1.**    Beginning with the text, *see Palm Beach County v. Federal Aviation Adm'r*, 53 F.4th 1318, 1330 (11th Cir. 2022), certain regulatory requirements—including obligations regarding ownership or control—are phrased as what SBA requires of "Participant[s]." *See* 13 C.F.R. § 124.105(i) (Participant must seek and receive approval for changes in ownership or control); *see also id.* § 124.105 (Participant must be majority owned by socially and economically disadvantaged individuals); *id.* § 124.106 (Participant generally must be controlled by one or more disadvantaged individuals). The regulation defines "Participant" as a "small business concern admitted to participate in the 8(a) [Business Development] program." *Id.* § 124.3.

Contrary to the district court's view, that definition does not categorically exclude 8(a) graduates from the regulatory requirements. A Program graduate was "admitted to participate" in the Program, in the same way that a college graduate was

"admitted" to her alma mater, even though she no longer attends the university. That is because the definition "lacks any temporal qualifier" that would distinguish current participation from past participation. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 342 (1997) (explaining that a statute defining "employee" as "an individual employed by an employer" could refer to past or present employment (quoting 42 U.S.C. § 2000e(f))). Indeed, other regulatory provisions recognize that "a Participant" has continuing obligations even "[a]fter the effective date of [an] early graduation." 13 C.F.R. § 124.304(f). At least in certain contexts, then, the definition of "Participant" encompasses Program graduates.

That definition coheres with the regulatory requirement that an 8(a) contract be performed by the "Participant" that originally received it. 13 C.F.R. § 124.515(a). This requirement must be read in harmony with the further requirement that "[a]fter the effective date of early graduation," a "Participant" must continue to perform its 8(a) contracts. *Id.* § 124.304(f)(1); *see In re Shek*, 947 F.3d 770, 777 (11th Cir. 2020) ("We must interpret statutes 'harmoniously,' reconciling separate sections so that they are compatible and not contradictory." (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 180 (2012))). Read together, an 8(a) graduate is a "Participant" with respect to the requirements pertaining to 8(a)

contracts that it continues to perform.[4]  Those requirements include the obligations to report and seek approval for changes in ownership and control and to seek a waiver of the mandatory contract termination if required.  13 C.F.R. § 124.304(c); *id.* § 124.518(b).

**2.**  The regulatory structure also refutes the district court's interpretation.  As described earlier, the regulation stipulates that an 8(a) contract must be performed by the "Participant" that originally received it, absent a waiver.  13 C.F.R. § 124.515(a).  The following subsection then provides that the relevant "8(a) contractor" may request a waiver.  *Id.* § 124.515(b).  In that context, "Participant" must encompass "8(a) contractor," the latter of which plainly includes a Program graduate performing an 8(a) contract.  It would be illogical for the set of entities eligible to request waivers to be broader than the set of entities subject to the prohibition in the first instance.

The waivers' substantive requirements confirm this interpretation.  As noted, one provision allows a business to change its ownership to raise equity capital but only if it "has graduated" from the 8(a) Program.  13 C.F.R. § 124.515(b)(5)(i).  If graduates were not subject to the initial prohibition, then no graduate would ever

_____

[4] The government's position here does not imply that every use of "Participant" in the regulation must include Program graduates.  Context matters.  *See Environmental Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007).  Some provisions referring to "Participant[s]" could only apply to current Participants.  *See, e.g.*, 13 C.F.R. § 124.301(a) ("A Participant may voluntarily withdraw from the 8(a) [Business Development] program at any time prior to the expiration of its program term.").

14

need such a waiver. The district court's interpretation thus deprives the regulatory waiver provision, like its statutory counterpart, of any effect.

The SBA regulation should also be read in harmony with the Federal Acquisition Regulations, which govern all acquisitions by the federal government. 48 C.F.R. § 1.104. Those regulations require termination of an 8(a) contract if the "contractor" transfers ownership or control absent a waiver. *See id.* § 19.812(e). That provision does not distinguish Program graduates from other Participants, *see id.*, and the SBA regulation should not be read to create an unnecessary conflict. Rather, the statute, the Federal Acquisition Regulations, and the SBA regulation all recognize ownership and control changes by a Program graduate can trigger the termination and waiver requirements. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018) ("Because we can easily read Congress's statutes to work in harmony, that is where our duty lies.").

**3.** The relevant regulatory history likewise undermines the district court's interpretation. As SBA explained in a recent rulemaking, "[t]here has been some confusion" about whether the change in ownership regulatory requirements apply to a "former Participant that is still performing one or more 8(a) contracts." Ownership and Control and Contractual Assistance Requirements for the 8(a) Business Development Program, 88 Fed. Reg. 26,164, 26,175 (Apr. 27, 2023). The newly promulgated rule "clarifie[s]" that the requirements remain in force while the business performs 8(a) contracts. *Id.* That clarification is consistent with SBA's prior

understanding and practice under the waiver provision discussed above: the rule explains how an 8(a) graduate "that is still performing an 8(a) contract" submitted a waiver request under SBA's preexisting procedures. *Id.* at 26,187. The district court's belief that its holding reflected "SBA's interpretation of the governing statutory scheme" was, therefore, mistaken. Dkt. 104, at 5.

The new regulation's use of "former Participant" does not support an inference that SBA's use of "Participant" (without any modifier) excludes Program graduates. Again, the regulatory definition of "Participant" is broad enough to encompass "former Participants," at least where context requires it, because the former term lacks any temporal qualifier. By contrast, SBA uses the term "current Participant" to refer exclusively to businesses that have not yet exited the Program. *See, e.g.*, 88 Fed. Reg. at 26,175, 26,182; *see also, e.g.*, 13 C.F.R. § 124.503(i)(1)(iii) (recognizing that, although Program graduates generally may receive new task orders, a procuring agency instead may decide to award an order "only to a concern that is a current Participant"). The new regulation thus highlights the district court's error.

**4.** Finally, application of the change in ownership and control regulations to Program graduates is most consistent with the fundamental purpose of the 8(a) Program. Congress created the Program in response to specific findings about the obstacles that socially and economically disadvantaged individuals face in participating in the national economy. *See* 15 U.S.C. § 631(f) (Congressional findings and declaration of purpose); *see also* 13 C.F.R. § 124.1. Given that focus, Congress

16

considered it imperative that contracting opportunities extended under the Program

not be transferred to benefit businesses and owners that fail to meet the essential

eligibility criteria. *See* H.R. Rep. No. 100-1070, at 69-70 (1988) (Conf. Rep.)

(explaining that "contract opportunities provided to develop small minority

businesses [should] not be transferred to firms outside of the program").

Recognizing that key concern, SBA's implementing regulations repeatedly emphasize

the importance of changes in ownership and control. *See, e.g.*, 13 C.F.R. § 124.112(a)

(requiring a Participant to inform SBA of changed circumstances regarding eligibility,

"especially economic disadvantage and ownership and control"); *id.* § 124.204(e)

(requiring an 8(a) applicant to inform SBA of changed circumstances, "particularly

economic disadvantage and ownership and control").

The district court's interpretation, which categorically exempts Program

graduates from the requirements to report and seek approval for changes in

ownership and control even while they are still performing 8(a) contracts, would

vitiate a core limitation on the businesses that can perform those contracts. If

accepted, ineligible businesses could easily obtain Program benefits by taking

ownership of, or control over, Program graduates with ongoing 8(a) contracts. The

regulation should be read to avoid creating such a "large and obvious loophole" in

the statutory and regulatory scheme. *County of Maui v. Hawaii Wildlife Fund*, 140 S. Ct.

1462, 1473-74 (2020).

## C.    Prior SBA administrative adjudications do not undermine SBA's interpretation.

The district court's dismissal order cited three decisions of SBA's Office of Hearings and Appeals that it understood as supporting its interpretation of the implementing regulation.  Dkt. 94, at 13-14.  Those decisions, however, are irrelevant to the question presented.

None of those decisions addressed the regulatory definition of "Participant" or involved changes in ownership or control.  Rather, two stand for the uncontroversial proposition that a company cannot enter into a new 8(a) contract or subcontract after graduating from the Program.  *See FTSI-Phelps JV*, SBA No. SIZ-5583, 2014 WL 4804769, at *8 & n.3 (Aug. 19, 2014) (explaining that the relevant procurement was "not an 8(a) [Business Development] procurement" but noting that even if it were, the business "would not be eligible for award because it graduated" before the offer deadline); *Reality Techs., Inc.*, SBA No. BDP-455, 2012 WL 8134444, at *2 n.2 (Nov. 21, 2012) (observing that an 8(a) Program graduate is considered a non-disadvantaged firm for purposes of the regulatory restrictions on subcontracting).  The third was an administrative appeal of an SBA decision graduating a contractor from the 8(a) Program early, which the adjudicator dismissed as moot because the contractor's maximum nine-year program term had expired.  *See David's Custom Roofing & Painting, Inc.*, SBA No. BDP-344, 2010 WL 8747273 (Mar. 16, 2010).  Accordingly, those

decisions do not in any way undermine SBA's reasonable interpretation of the regulation.

## CONCLUSION

For the foregoing reasons, the Court should clarify that 8(a) Program graduates performing 8(a) contracts remain subject to the statutory and regulation restrictions on changes in ownership and control, at least as long as they are performing 8(a) contracts. The government takes no position on whether the judgment of the district court could be affirmed on other grounds.

Respectfully submitted,

BRIAN M. BOYNTON
   *Principal Deputy Assistant Attorney*
     *General*
ROGER B. HANDBERG
   *United States Attorney*

MICHAEL S. RAAB
CHARLES W. SCARBOROUGH

 *s/ Simon C. Brewer*
SIMON C. BREWER
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7529*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 616-5367*
   *Simon.C.Brewer@usdoj.gov*

May 2023

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 29(a)(4)-(5) because it contains 4313 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Simon C. Brewer*
SIMON C. BREWER

# CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system.


*s/ Simon C. Brewer*
SIMON C. BREWER